**In re Maurice R. DALAIMO and Julia F. Dalaimo, Debtors.**

**Bankruptcy No. 86–7092–H11.**

United States Bankruptcy Court, S.D. California.

June 30, 1988.

Bruce M. Hirsch, San Diego, Cal., for debtors.

Michael T. O'Halloran, San Diego, Cal., for trustee.

James W. Beshears, San Diego, Cal., for respondent Warren Seinsoth.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

At issue is whether United States government pension payments received by the debtors are exempt under California's exemption statutes. Also at issue is whether debtors' IRA accounts are exempt.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), and General Order No. 312–D of the United States District Court, Southern District of California. This is a core pro-ceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

BACKGROUND

Maurice and Julia Dalaimo filed their petition for relief under Chapter 11 on October 31, 1986. Maurice Dalaimo is a retiree from the U.S. government and receives a pension from the government. The Dalaimos also have several Individual Retirement Accounts (IRAs).

Warren Seinsoth, a judgment creditor of the Dalaimos, objects to the claimed exemptions in the pension payments and IRAs.

ARE THE PENSION PAYMENTS EXEMPT?

█ Pension funds are exempt from execution under California Code of Civil Procedure § 704.110(d) [1]. Seinsoth contends that § 704.110(d) does not exempt United States government pensions from execution. Seinsoth's argument is that Dalaimo's pension is a "public retirement benefit" as defined in § 704.110(b)—a pension payable by a public retirement system. A "public retirement system" is defined in § 704.110(a), which excludes the United States except where provided. Seinsoth reads 704.110(d) in the alternative, exempting either public retirement benefits *or* returns of contributions and interest thereon from the United States, a public entity, or a public retirement system. Seinsoth argues that since the United States is only referred to following the exemption for returns of contribution and interest, that United States government pensions are not

---

1. **704.110. Public retirement benefits; rights and benefits under public retirement system; return of contributions from public entity**

(a) As used in this section:

(1) "Public entity" means the state, or a city, city and county, county, or other political subdivision of the state, or a public trust, public corporation, or public board, or the governing body of any of them, but does not include the United States except where expressly so provided.

(2) "Public retirement benefit" means a pension or an annuity, or a retirement, disability, death, or other benefit, paid or payable by a public retirement system.

.(3) "Public retirement system" means a system established pursuant to statute by a public entity for retirement, annuity, or pension purposes or payment of disability or death benefits.

(b) All amounts held, controlled, or in the process of distribution by a public entity derived from contributions by the public entity or by an officer or employee of the public entity for public retirement benefit purposes, and all rights and benefits accrued or accruing to any person under a public retirement system, are exempt without making a claim.

(c) [Concerns exemptability of pensions from execution in satisfaction of judgments for child support].

(d) All amounts received by any person, a resident of the state, as a public retirement benefit or as a return of contributions and interest thereon from the United States or a public entity or from a public retirement system are exempt.

exempt, since the United States is not expressly provided for in the first part of subsection (d). This is a question of first impression.

■ Seinsoth correctly points out that interpretation of a statute depends in the first instance upon the language of the statute. If the language is clear and unambiguous, the court is constrained by the statute. Seinsoth cites the dissenting opinion in *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) for the proposition that the court is obliged to give effect to every word Congress used. This argument ignores the majority opinion in that case, which states that "ascertainment of the meaning apparent on the face of a single statute need not end the inquiry." 451 U.S. at 266, 101 S.Ct. at 1677. The Court stated that "sole reliance on the 'plain language' ... would assume the answer to the question at issue." 451 U.S. at 266, 101 S.Ct. at 1678.

This court finds § 704.110(d) ambiguous. While it could be read to give the effect urged by Seinsoth, it can just as easily be read to exempt public retirement benefits or return of contributions and interest thereon from any of the listed sources: the United States, a public entity, or a public retirement system. This being the case, this court turns for guidance to the legislative history of the statute.

The Law Revision Commission Comment to the 1982 addition states in part "Section 704.110 continues the substance of subdivisions (a) and (b) of former section 690.18 [2], with drafting changes for purposes of clarity and uniformity." Cal.Civ.Proc.Code § 704.110 (West 1987).

Former section 690.18 has been interpreted by the California courts to exempt United States government pensions. *See, In re Marriage of McGhee*, 131 Cal.App.3d 408, 182 Cal.Rptr. 456 (1982); *Roosevelt v. Roosevelt*, 117 Cal.App.3d 397, 172 Cal. Rptr. 641 (1981); *In re Marriage of DeLotel*, 73 Cal.App.3d 21, 140 Cal.Rptr. 553 (1977).

As the majority opinion in *Watt v. Alaska* stated,

[o]ur examination of the legislative history is guided by another maxim: repeals by implication are not favored.... The intention of the legislature to repeal must be clear and manifest.... We must read the statutes to give effect to each while preserving their sense and purpose.

451 U.S. at 267, 101 S.Ct. at 1678 [citations omitted].

Had the California legislature intended to overrule the body of case law developed under former section 690.18, there would have been a more definite statement to that effect. Indeed, the Law Revision Committee Comment indicates otherwise. Section 704.110 is intended to continue the substance of former section 690.18.

Though it is possible to read § 704.110(d) in the manner Seinsoth urges, this court declines to do so. The alternative interpretations which may be ascribed to § 704.110(d) are the result of inartful drafting, rather than an intent by the Legislature to change the substance of former section 690.18.

Accordingly, this court holds that Dalaimo is entitled to an exemption in the funds representing pension payments from the United States government.[3]

## LIEN AVOIDANCE

■ Seinsoth objects to the debtor's motion under 11 U.S.C. § 522(f) to avoid liens on various bank accounts which were levied upon by the San Diego County Marshal. The Dalaimos claim that these accounts represent direct deposits of Social Security payments, and that any other funds in these accounts are from Maurice

---

2. **690.18. Pensions, Death Benefits and Funds**
  (a) Except with regard to court-ordered child or spousal support payments, money received by any person, a resident of the state, as a pension, or as an annuity or retirement or disability or death or other benefit, or as a return of contributions and interest thereon, from the United States government or from any county, city, ...

3. Although not addressed by the parties, the court questions the constitutionality of a state statute which exempted pensions for state employees but not similarly-situated federal employees.

Dalaimo's federal retirement pay. California Civ.Proc.Code § 704.080 exempts "deposit accounts," which are defined as accounts into which the Federal government directly deposits a social security recipient's payments.

California Civ.Proc.Code § 704.080 [4] requires financial institutions to notify the levying officer in writing that an account is a deposit account and further requires the institution to put the money into a blocked account pending further proceedings. Seinsoth argues that because of the fact that the marshal was able to levy upon the accounts, the accounts were not "deposit accounts."

Home Federal, one of the banks holding accounts that Dalaimos claim exempt, failed to notify the Marshal that the account was a "deposit account." Instead, the funds in the account were turned over to the Marshal in response to the levy. Seinsoth claims that due to this failure, the accounts are not "deposit accounts." This court does not find this *post hoc ergo propter hoc* reasoning persuasive. Deposit accounts acquire their status as such through the character of the funds deposited in them, not through the actions of bank employees in responding to a levy. Seinsoth's argument seems to be that accounts become "deposit accounts" only after bank employees correctly respond to levying officers. This court does not accept this novel interpretation. Rather, this court holds that the deposit accounts which were turned over to the Marshal are exempt, to the extent the debtor can prove that funds in the accounts are attributable to direct deposits of Social Security payments, up to the statutory maximum, and of exempt Federal pension payments.

## IRA FUNDS

■ The Dalaimos seek to avoid Seinsoth's lien on their Individual Retirement Accounts ("IRAs") under 11 U.S.C. § 522(f). California Civ.Proc.Code § 704.115, utilized by the Dalaimos, provides in pertinent part that IRA funds are exempt, but "only to the extent necessary to provide for the support of the debtor and his spouse and dependents." In *In re Vigghiany*, 74 B.R. 61 (Bankr.S.D.Cal.1987), this court held that IRA funds were exempt under Cal.Civ.Proc.Code § 704.115(d), to the extent limited by Cal.Civ.Proc.Code § 704.115(e).

California Civ.Proc.Code § 704.115(e) requires a court considering an exemption based upon need to take into account *all* of the property of the debtor and his family, and *all* of the needs of the debtor and his family. The legislative comment to § 704.115(e) recommends that the court consider all resources—including social security pensions and other income assets—presently vested or likely to vest in the debtors.

Consequently, Seinsoth contends that none of the Dalaimo's IRA monies are exempt because they are not "reasonably necessary." He argues that because the Dalaimos are already retired and have fixed income sufficient for supporting their needs, the IRA's are unnecessary. Seinsoth also emphasizes that the Dalaimos claim $390.00 per month payments on a new 1986 car worth approximately $11,400.00, which will ultimately disappear when the car is paid. Seinsoth further argues that the Dalaimos claim to $150.00 per month for medical and drug needs is exaggerated. As there is no present need

---

**4. Deposit account; payments authorized by Social Security Administration**
(a) For the purposes of this section:
(1) "Deposit account" means a deposit account in which payments authorized by the Social Security Administration are directly deposited by the United States government.
(2) "Payments authorized by the Social Security Administration" means regular retirement and survivors' benefits, supplemental security income benefits, coal miners' health benefits, and disability insurance benefits.
(b) A deposit account is exempt without making a claim in the following amount:

(1) Five hundred dollars ($500) where one depositor is the designated payee of the directly deposited payments.
(2) Seven hundred fifty dollars ($750) where two or more depositors are the designated payees of the directly deposited payments, ...
(c) The amount of a deposit account that exceeds the exemption provided in subdivision (b) is exempt to the extent that it consists of payments authorized by the Social Security Administration.

for the IRA funds, Seinsoth concludes that they are therefore not exempt under § 704.115(e).

The "reasonably necessary" standard has been given varied applications. However, two common themes surface in nearly every analysis of "reasonably necessary," (1) the debtors present need for the money and (2) the ability to rebuild the retirement fund if purged.

In *In re Kochell*, 26 B.R. 86 (Bankr.W.D. Wis.1982), the court found that a forty-four year old Chapter 7 debtor, with a gross income of $36,000.00 per month from his medical practice, resulting in a positive cash flow of $1,500.00 per month, would have to fully relinquish his retirement accounts to creditors. Here it was noted that the debtor had no present need for the funds, and the debtor had a great capacity to rejuvenate the accounts. The Court ultimately permitted a $3,700 exemption based on § 522(d)(5), but denied the exemption of the remainder of the funds. *Kochell*, 26 B.R. at 88–89.

This same result was reached in *In re Montavon*, 52 B.R. 99 (Bankr.D.Minn. 1985), where the youthful debtor's modest income of $2,020.00 exceeded monthly expenses by $530.00, and thus there would be ample opportunity to rebuild the $7,115.00 in retirement accounts. 52 B.R. at 103–104. In dicta, this court added that were the debtor presently retired, it would be inclined to exempt the entire retirement account regardless of any "reasonable necessity." 52 B.R. at 102. (*See also, In re Schwartz*, 58 B.R. 606 (Bankr.N.D.Iowa 1984); *In re Donaghy*, 11 B.R. 677 (Bankr. S.D.N.Y.1981); *Matter of Taft*, 10 B.R. 101 (Bankr.D.Conn.1981) (a retired debtor in Chapter 7 ordered to surrender fifty percent of its pension in order to satisfy a single debt of $21,000.00, leaving the debtor with $22,000.00 of income, sufficient for his basic needs).

In *In re Worthington*, 28 B.R. 736 (Bankr.W.D.Ky.1983), the court interpreted a Kentucky law permitting the IRA exemption. Without discussing any of the pertinent factors under the "reasonably necessary" standard, the court found that $6,000.00 was per se a reasonable amount

to exempt. Three years later, the same court in *In re Fischer*, 63 B.R. 649 (Bankr. W.D.Ky.1986) permitted a sixty-one year old physician with over $600,000.00 in yearly earnings to exempt a combined IRA and KEOGH for the full $69,000.00. The court noted that the trustee failed to establish its burden of proving that the amounts were not necessary to retirement or disability. 63 B.R. at 651.

The *Fischer* court considered the debtor's age, earning capacity, present and future financial needs, and his ability to reestablish a retirement fund, and found that the considerable earning capacity was not sufficient to rejuvenate the present retirement fund in the few remaining work years that the debtor had. 63 B.R. at 652.

The Dalaimos have scheduled the following income and liabilities:

| LIABILITIES | | INCOME | |
|---|---|---|---|
| Mortgage | $1,007.22 | Federal Pension | $2136.74 |
| Utilities | 167.00 | Social Security | 745.00 |
| Food | 400.00 | | |
| Maintenance | 25.00 | | |
| Medical & Drug | 150.00 | | |
| Insurance | 259.20 | | |
| Transportation | 60.00 | | |
| Recreation | 30.00 | | |
| Taxes | 216.00 | | |
| Charity | 45.00 | | |
| Auto payments | 390.41 | | |
| Security System | 18.00 | | |
| License | 20.00 | | |
| | $2,863.53 | | 2,881.74 |

The income figures do not reflect a modest income which the Dalaimos may receive from a rental property, which the Dalaimos assert is being liquidated by the trustee. The income figures also do not reflect a potential $3,000.00 loss carry forward, to which the Dalaimos have made an offer of proof that no loss carry forward is available.

This court finds that the claimed IRA exemptions must be sustained under the "reasonably necessary" standard. The amount of $11,706.00 is relatively modest. The budget submitted by the Dalaimos is reasonable. While there is sufficient current income to meet current expenses, there is no contingency allowance built in. Such contingencies are inevitable, given the age of the Dalaimos and the inevitable forces of inflation and obsolesence. The Dalaimos have no ability to rejuvenate their accounts, since they are retired. Although this court cannot prognosticate the debtors unforeseen future liabilities, it

must anticipate likely problems and probable consequences, such as ill health and the cost of health care, *inter alia.* Living on a fixed income in retirement assures the debtors the inevitable vulnerabilities facing aging citizens. This court finds the $11,706.00 IRA security blanket to be reasonably necessary, regardless of the lack of a present need to meet current expenses.

CONCLUSION

The Dalaimo's federal pension is properly claimed exempt under Cal.Civ.Proc.Code § 704.110(d). All funds deposited in the accounts seized by the Marshal which represent social security or U.S. government pension benefits shall be returned to the Dalaimos, and Seinsoth's liens avoided to the extent allowable under the exemption.

Based on the Dalaimos schedules and statement of affairs, as well as the supplemental pleadings filed herein, this court holds that debtors have shown that the IRA funds are necessary to the maintenance of the debtor and his family.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the Dalaimos is directed to prepare an order in accordance with this Memorandum Decision within 10 days of the entry herein.